J-A09046-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AARON DYKES | |
| Appellant | No. 3091 EDA 2012 |

Appeal from the Order September 12, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012380-2008

BEFORE: BOWES, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                              **FILED AUGUST 21, 2014**

Aaron Dykes appeals from the order entered September 12, 2012, in the Philadelphia County Court of Common Pleas, denying his petition for the expungement of his criminal record in the above-captioned case. On appeal, Dykes contends the trial court abused its discretion in denying his petition for expungement. For the reasons set forth below, we agree and reverse.

The facts underlying this appeal were summarized by the trial court as follows:

> Appellant, Aaron Dykes, was arrested on August 7, 2008, and charged with twenty-four (24) counts of fifteen (15) different crimes:[1]  Conspiracy to Commit Robbery and Inflict

_____

[1] A review of the certified record reveals that Dykes was actually charged with 26 counts.

Serious Bodily Injury, Unlawful Restraint, Attempted Theft, [Possession of an Instrument of Crime (PIC)] with Intent, Terroristic Threats, Simple Assault, [Recklessly Endangering Another Person (REAP)], False Imprisonment, Conspiracy to Murder, Theft by Unlawful Taking, Receiving Stolen Property, Carrying Firearms in Public, Attempted Murder, Carrying a Firearm with a License, Person not to Possess or Use Firearms, and Robbery with Intent to Inflict Serious Bodily Injury. At his September 26, 2008, preliminary hearing, the Carrying Firearms in Public, Attempted Murder, Carrying a Firearm without a License, and Person not to Possess or Use Firearms charges were dismissed for lack of evidence, and the remaining charges were held for court. On October 17, 2008, the Robbery with Intent to Inflict Serious Bodily Injury charge was changed to Robber[y] with Threat of Immediate Serious Bodily Injury. On April 20, 2010, the Commonwealth decided to *nolle prosse* the remaining charges, but [] Dykes failed to appear for a hearing and on June 2, 2010, the *nolle prossed* charges were reinstated and a bench warrant was issued.

[] Dykes was arrested twice on unrelated charges in 2011, and on October 6, 2011 the Commonwealth tried [] Dykes for the reinstated *nolle prossed* charges for which the bench warrant had been issued. [] Dykes was found not guilty or was acquitted of all charges related to his 2008 arrest. On September 6, 2012, [] Dykes was sentenced to probation for his 2011 arrests.

[] Dykes moved to expunge the records of his 2008 arrest and charges. This Court held a **Wexler**[2] hearing on September 12, 2012, and found that none of the charges passed **Wexler**. [Dykes] filed his timely Notice of Appeal on October 12, 2012, and his 1925(b) Statement of Errors Complained of on Appeal was filed on November 2, 2012.

Trial Court Opinion, 6/18/2013, at 1-2 (footnotes and internal citation omitted).

_____

[2] **Commonwealth v. Wexler**, 431 A.2d 877 (Pa. 1981).

On appeal, Dykes argues the trial court abused its discretion in denying his petitions for expungement. Specifically, he contends the trial court failed to place the initial burden on the Commonwealth to justify the retention of his non-conviction records with specific, compelling reasons, and the Commonwealth's failure to provide any compelling reason for retention of his 2008 arrest records precluded the trial court from denying his expungement petition. Finally, with regard to the criminal charges for which he was acquitted, Dykes argues that he was entitled to expungement of those charges as a matter of law pursuant to the Pennsylvania Supreme Court's decision in **Commonwealth v. D.M.**, 695 A.2d 770, 773 (Pa. 1997).

Preliminarily, we note that "[t]he decision to grant or deny a petition to expungement lies in the sound discretion of the trial court, who must balance 'the individual's right to be free from harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records.'" **Commonwealth v. Wallace**, ___ A.3d ___, 2014 WL 3579692, *6 (Pa. filed 7/21/2014), quoting **Wexler**, **supra**, 431 A.2d at 879.

In **Commonwealth v. Moto**, 23 A.3d 989 (Pa. 2011), our Supreme Court set forth the relevant considerations when ruling upon a defendant's petition for expungement of criminal records:

> Judicial analysis and evaluation of a petition to expunge depend upon the manner of disposition of the charges against the petitioner. When an individual has been convicted of the offenses charged, then expungement of criminal history records may be granted only under very limited circumstances that are

- 3 -

set forth by statute. 18 Pa.C.S. § 9122; **Hunt v. Pennsylvania State Police**, 603 Pa. 156, 983 A.2d 627, 633 (2009). When a petitioner has been tried and acquitted of the offenses charged, we have held that the petitioner is "automatically entitled to the expungement of his arrest record." **Commonwealth v. D.M.**, 548 Pa. 131, 695 A.2d 770, 772–73 (1997). When a prosecution has been terminated without conviction or acquittal, for reasons such as *nolle prosse* of the charges or the defendant's successful completion of an accelerated rehabilitative disposition program ("ARD"), then this Court has required the trial court to "balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records." **Commonwealth v. Wexler**, 431 A.2d 877, 879 (Pa.1981); **D.M.**, **supra** at 772 ("We reiterate the authority of **Wexler** and the balancing test approved therein as the means of deciding petitions to expunge the records of all arrests which are terminated without convictions except in cases of acquittals.").

To aid courts in applying the balancing test for expungement, we also adopted in **Wexler** the following non-exhaustive list of factors that the court should consider:

> These factors include [1] the strength of the Commonwealth's case against the petitioner, [2] the reasons the Commonwealth gives for wishing to retain the records, [3] the petitioner's age, criminal record, and employment history, [4] the length of time that has elapsed between the arrest and the petition to expunge, and [5] the specific adverse consequences the petitioner may endure should expunction be denied.

**Wexler**, **supra** at 879 (citation omitted).

We have emphasized that in applying the balancing test and considering the above factors, the court must analyze the particular, specific facts of the case before it. **Id.** at 880–81. The mere assertion by the Commonwealth of a general interest in maintaining accurate records of those accused of a crime does not outweigh an individual's specific, substantial interest in clearing his or her record. **Id.** at 881–82.

In addition, **Wexler** explicitly placed the burden of proof on the Commonwealth. The case against the **Wexler** appellants had been *nolle prossed* after the Commonwealth had admitted that it would be unable to sustain its burden of proof at trial.

> *Wexler*, *supra* at 880. Nonetheless, the trial court denied the appellants' petition to expunge their arrest records, and the Superior Court affirmed. [The Supreme] Court reversed and ordered expungement, concluding that the Commonwealth had not proffered "compelling evidence" to justify the retention of the appellants' arrest records. *Id.* at 881. Importantly, in general terms, we held that when the Commonwealth admits that it is unable to bear its burden of proof beyond a reasonable doubt at trial, then "the Commonwealth must bear the burden of justifying why the arrest record should not be expunged." *Id.* at 880.

*Id.* at 993-994.

Therefore, pursuant to *Wexler*, *supra*, and its progeny, the Commonwealth bears the burden of justifying the retention of a defendant's non-conviction records when the charges were dismissed by the Commonwealth before trial.

In his first issue, Dykes argues *Wexler* requires a "two-step process at an expungement hearing." Dykes's Brief at 11. First, the Commonwealth must meet its initial burden of providing specific, compelling reasons to retain the defendant's non-conviction records. Only after the Commonwealth has met its initial burden should the trial court engage in a balancing test considering the *Wexler* factors. *See id.*

We do not agree that *Wexler* and its progeny require the Commonwealth to overcome an initial hurdle before the trial court may weigh the *Wexler* factors. It is clear that in a case in which the charges against a defendant were dismissed before trial, the Commonwealth bears the ultimate burden of justifying retention of his criminal records. Moreover, this Court has explained:

> [The **Wexler** factors] serve as guidance to the court in determining whether the Commonwealth has met its burden. Those factors do not shift the burden of persuasion to the petitioner. If the petitioner does not show great harm or prejudice by retention of the records, such a showing may be considered in a balancing test, but the ultimate burden of proof and persuasion is upon the Commonwealth.

**Commonwealth v. McKee**, 516 A.2d 6, 9 (Pa. Super. 1986). The cases do not, however, require the trial court to forgo consideration of the **Wexler** factors when the Commonwealth initially fails to provide sufficient, compelling reasons for retention of the defendant's criminal record.[3] Rather, as our Supreme Court stated in **D.M.**, **supra**, "**[a]ll the factors** listed in **Wexler**, and similar additional considerations, **should be evaluated** in expunction cases which are terminated without conviction for reasons such as *nolle prosequi* or ARD." **Id.**, 695 A.2d at 773 (emphasis supplied). Therefore, we decline to create a two-part test, as suggested by Dykes, requiring the Commonwealth to provide compelling reasons for the retention of a defendant's non-conviction record **before** permitting the trial court to consider the **Wexler** factors.[4]

_____

[3] Naturally, however, the Commonwealth's failure to provide such compelling reasons would weigh heavily in favor of expungement.

[4] Indeed, under Dykes's analysis, a **Wexler** hearing would be unnecessary if the Commonwealth did not initially respond to the expungement petition with sufficient, compelling reasons justifying retention of the criminal records.

Dykes also argues that where, as here, the Commonwealth fails to present "specific, compelling evidence" at the **Wexler** hearing supporting retention of his criminal record, "the trial court, logically, cannot come to a reasoned decision that the Commonwealth met its evidentiary burden." Dykes Brief at 17. Further, he contends that pursuant to the Pennsylvania Supreme Court's mandate in **D.M.**, **supra**, he was entitled to expungement of the charges of which he was acquitted as a matter of law. We will consider these claims in reverse order.

In **D.M.**, **supra**, the Pennsylvania Supreme Court held that when a petitioner has been acquitted of criminal charges, he is "automatically entitled to expungement of his arrest record." **D.M.**, 695 A.2d at 773. The Court explained:

> We hold, in agreement with the reasoning of the Superior Court, that the **Wexler** balancing is unnecessary, indeed inappropriate, when a petitioner has been tried and acquitted.
>
> The problem is in attempting to apply the first factor of **Wexler**—the strength of the Commonwealth's case against the petitioner—after a trial which resulted in a verdict of acquittal. We regard it as improper to go behind a verdict of acquittal and purport to assess the strength of the prosecution's case. A defendant enters a trial cloaked in the presumption of innocence and when the fact-finder reaches a verdict of acquittal, there is no justification to search for reasons to undermine the verdict. Such a defendant has achieved the strongest vindication possible under our criminal tradition, laws, and procedures; we hold that he is entitled to expunction of the arrest record.
>
> All the factors listed in **Wexler**, and similar additional considerations, should be evaluated in expunction cases which are terminated without conviction for reasons such as *nolle prosequi* or ARD. In cases of acquittal, however, we hold that a

- 7 -

petitioner is automatically entitled to the expungement of his arrest record.[5]

*Id.* at 772-773 (footnote omitted). **See also Moto**, **supra**, 23 A.3d at 993.

Here, there is no dispute that Dykes was acquitted of 19 of the charges he seeks to expunge from his 2008 arrest – the trial court granted a judgment of acquittal as to 15 counts, and Dykes was found not guilty of the remaining four counts. **See** Disposition and Dismissal Form, 10/6/2011. Pursuant to the mandate in **D.M.**, Dykes was "automatically entitled to expungement" of those arrest records. **D.M.**, **supra**, 695 A.2d at 773. Indeed, even the Commonwealth states in its brief that it "does not oppose the expungement of the charges of which [Dykes] was acquitted." Commonwealth's Brief at 1. Therefore, we conclude the trial court abused

_____

5 We note that in **Wallace**, **supra**, the Pennsylvania Supreme Court recently narrowed the mandate in **D.M.**, holding that "an inmate does **not** have the right to petition for expungment **while incarcerated**[,]" even though some of the charges the petitioner sought to expunge in that case resulted in acquittals. **Wallace**, **supra**, at *10 (emphasis supplied). In a concurring opinion, Justice Castille cautioned against an expansive reading of **D.M.**, particularly in light of the facts presented in **D.M.** **Id.** at *10-*11 (Castille, J. Concurring Opinion) Indeed, **D.M.** involved a schoolteacher, with no prior criminal record, who had been acquitted of misdemeanor indecent assault and corruption of minors charges, while **Wallace** involved a defendant with a "lengthy career in crime, embracing decades and hundreds of criminal actions, leading to his current incarceration status[.]" **Id.** at *11. Since, however, it does not appear that Dykes is presently incarcerated, or was so at the time he filed the expungement petition, the pronouncement in **Wallace** does not affect our decision.

its discretion when it failed to grant Dykes's petition, with respect to those charges of which he was acquitted.[6]

Although the Commonwealth concedes that the acquitted charges are subject to expungement, it argues the trial court properly denied Dykes's petition for expungement of the charges for which he was not acquitted, but were dismissed prior to trial. While the Commonwealth does not specify those specific charges, our review of the certified record reveals that on October 17, 2008, the Commonwealth withdrew five violations of the Uniform Firearms Act and one count of attempted murder for lack of evidence. *See* Trial Disposition and Dismissal Form, 10/6/2011.[7] The Commonwealth also withdrew one additional count of carrying a firearm in public on October 6, 2011. These seven charges were subject to the ***Wexler*** test. ***See Commonwealth v. Rodland***, 871 A.2d 216, 221 (Pa. Super. 2005) (holding that ***Wexler*** test applied to determine whether

_____

[6] We also find that our disposition necessarily includes the two robbery charges that were changed. Dykes was originally charged with two counts of robbery under 18 Pa.C.S. § 3701(a)(i) (inflicts serious bodily injury). However, those charges were changed to two counts of robbery under subsection (a)(ii) (threatens another with serious bodily injury), charges of which he was found not guilty at trial.

[7] Although the form does not indicate that the charges were dismissed for "lack of evidence," the Court Summary, attached to the Commonwealth's brief, does note that that the charges were "Dismissed – LOE." *See* Commonwealth's Brief, Attachment, Court Summary. Further, neither the Commonwealth, nor the trial court, disputes Dykes's statement that the charges were dismissed due to lack of evidence. *See* Trial Court's Opinion, 6/18/2013, at 2.

petitioner was entitled to expungement of charges which were dismissed for lack of evidence). However, in **Rodland**, this Court noted that "[r]arely, if ever, will charges dismissed for lack of evidence fail to qualify for expungement under **Wexler**." **Id.**

In the present case, the trial court provided the following rationale in support of its denial of Dykes's petition for expungement:

> [In considering the **Wexler** factors, h]ere, the second factor is supported by the Commonwealth's desire to make employers aware of Mr. Dykes's character, an interest previously held valid. **Commonwealth v. A.M.R.**, 2005 PA Super. 398, 887 A.2d 1266, 1270 (Pa. Super. Ct. 2005).[8] The third factor weighed against expungement, as Mr. Dykes's criminal record continued to grow with his two arrests in 2011. The fourth factor, length of time since the arrest, also favored record maintenance; it had only been four years since his arrest at the time of Mr. Dykes's **Wexler** hearing. The fifth factor most heavily favored record maintenance; Mr. Dykes had open cases on his record, was on probation, and was employed at the time of his **Wexler** hearing.

---

[8] The trial court's reliance on **A.M.R**. is misplaced, as is evident from the following passage:

> With regard to the second factor, the [trial] court found the Commonwealth wanted to retain the record so future employers would be aware of Appellant's defective character. That this Court finds no such defect is irrelevant. **It is relevant, however, that the Commonwealth made no such argument at the expungement hearing**.

**A.M.R.**, **supra**, 887 A.2d at 1270 (Pa. Super. 2005) (emphasis supplied). Therefore, this Court did **not** hold that the Commonwealth's interest in making employers aware of a petitioner's character was a "valid" concern under **Wexler**. Rather, we found that such an argument was waived since it was not raised by the Commonwealth during the **Wexler** hearing.

His current probation combined with other arrests and charges on his record mean these 2008 charges alone add little, if any, harm.[9] Clearly, Mr. Dykes is still able to successfully achieve employment, is not being prejudiced by the Commonwealth's maintenance of the record of his 2008 charges. With four factors favoring maintenance of Mr. Dykes's record it is this Court's opinion that justice does not demand expungement.

Trial Court Opinion, 6/18/2013, at 4-5.

However, the trial court did not discuss the first factor in the **Wexler** test, that is, the strength of the Commonwealth's case. That factor is particularly significant in the present case for two reasons. First, six of the seven charges at issue were dismissed for lack of evidence. As noted above, this Court in **Rodland** stated that "[r]arely, if ever, will charges dismissed for lack of evidence fail to qualify for expungement under **Wexler**." **Rodland**, **supra**, 871 A.2d at 221. Second, and most importantly, Dykes was ultimately **acquitted** of the remaining charges, and, therefore, was completely exonerated of the criminal incident from which those charges arose.[10] As our Supreme Court observed in **D.M.**:

A defendant enters a trial cloaked in the presumption of innocence and when the fact-finder reaches a verdict of acquittal, there is no justification to search for reasons to undermine the verdict. Such a defendant has achieved the strongest vindication possible under our criminal tradition, laws,

_____

[9] This finding by the trial court is dubious, since one of the 2008 dismissed charges was a count of attempted murder.

[10] There is no dispute that all of the charges arose from "the alleged gunpoint robbery of a Chinatown massage parlor." Commonwealth's Brief at 2.

and procedures; we hold that he is entitled to expunction of the arrest record.

***Id.***, 695 A.2d at 772-773.

Both the trial court and the Commonwealth, however, emphasize Dykes's recent criminal record, which includes two "open cases" - (1) a guilty plea to two violations of the Uniform Firearms Act, and (2) a guilty plea to possession with intent to deliver a controlled substance, and an arrest for gun charges, which was later *nolle prossed*. ***See*** N.T., 9/12/2012, at 5; Commonwealth's Brief, at 3-4. We conclude that his recent crimes do not erase the fact that he was found **not guilty** of the August 7, 2008, gunpoint robbery. Indeed, during the ***Wexler*** hearing, the Commonwealth presented no evidence as to why the dismissed charges, *i.e.*, violations of the Uniform Firearms Act and attempted murder, should be treated differently from the charges that resulted in acquittals. The only argument the Commonwealth presented, which the trial court readily accepted, was that due to Dykes's recent guilty pleas, "it's hard to say that there's harm when he's avoiding the court and getting arrested on a new case and getting sentenced on a new case." N.T. 9/12/2012, at 5. In light of the Supreme Court's broad pronouncement in ***D.M.***, we find that the Commonwealth's concern with maintaining the arrest records of a defendant who has been exonerated, is of no relevance. Accordingly, we conclude the trial court

abused its discretion in denying Dykes's petition to expunge the 2008 charges that were dismissed prior to trial, but did not result in an acquittal.[11]

The Commonwealth, however, argues that this Court's decision in **Commonwealth v. Dobson**, 684 A.2d 1073 (Pa. Super. 1996), supports the trial court's ruling and is "directly on point." Commonwealth's Brief at 6. In that case, the trial court denied the defendant's petition to expunge his arrest records on weapons charges, even though some of those arrests resulted in acquittals. **Id.** at 1074. This Court affirmed on appeal concluding the trial court did not abuse its discretion in applying the **Wexler** factors. In particular, the defendant was incarcerated on a nine to 26 year prison sentence, and had a 25-year criminal record. This Court observed, "[p]resumably, expungement exists to correct the harm which may arise from an uncharacteristic act, not as a selective white-washing measure for those who have spent their lives committing crimes." **Id.** at 1076.

However, the Commonwealth fails to acknowledge that **Dobson** was decided before the Supreme Court's pronouncement in **D.M.**, that "the **Wexler** balancing is unnecessary, indeed inappropriate, when a petitioner has been tried and acquitted[,]" and that a petitioner who has been

---

[11] **Compare Rodland**, **supra**, 871 A.2d at 219 (holding that, when a defendant is **convicted of some charges and acquitted of others**, "the Commonwealth may avoid expungement … only when it demonstrates to the trial court that expungement is impractical or impossible under the circumstances.").

acquitted of charges "is automatically entitled to the expungement of his arrest record." **D.M.**, **supra**, 695 A.2d at 772, 773. Further, pursuant to the Supreme Court's recent holding in **Wallace**, incarcerated petitioners, such as the defendant in **Dobson**, no longer "have the right to petition for expungment while incarcerated." **Wallace**, **supra**, at *10. Accordingly, the precedential effect of the **Dobson** decision is dubious, at best.

Therefore, because we find the trial court abused its discretion in denying Dykes's petition to expunge all charges related to his August 7, 2008, arrest, we reverse the order of the trial court.

Order reversed. Case remanded with directions to expunge the record as requested. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/21/2014